

**LIPSKY LOWE** LLP

AN EMPLOYMENT LAW FIRM

This matter has now been referred to Magistrate Judge Tarnofsky for general pretrial management.  The parties shall raise this dispute, as well as any future discovery disputes, before Judge Tarnofsky.

SO ORDERED.

Hon. Ronnie Abrams
June 22, 2026

Travis Pierre-Louis

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main:  212.392.4772
Direct:  646.494.0667
travis@lipskylowe.com

www.lipskylowe.com

June 18, 2026

<u>VIA ECF</u>
Honorable Ronnie Abrams, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2203
New York, New York 10007

RE:     <u>*Felder v. Urban Outfitters, Inc., et al.*</u>, No. 1:25-cv-07283 (RA)

Dear Judge Abrams:

This firm represents Plaintiff. Pursuant to Local Civil Rule 37.2 and Your Honor's Individual Practices in Civil Cases, Section 3, Plaintiff respectfully requests that the Court so-order Plaintiff's proposed ESI Protocol ("Ex. 1") and compel Defendants to produce all responsive ESI by a date certain.

I.     <u>Background and Procedural History</u>

By way of background, Plaintiff was employed by Defendants from May 2022 until her unlawful termination on January 12, 2024, and asserts claims under the FMLA, NYSHRL, and NYCHRL arising from persistent discriminatory harassment, failure to accommodate her disabilities, and termination on the day she returned from FMLA leave. The claims centrally implicate four custodians: Jake Pelletier, Plaintiff's direct supervisor and individual defendant, who dismissed her complaints and personally terminated her employment; Kate Chase-Lansdale, General Manager and individual defendant, who received notice of Plaintiff's harassment complaints and took no remedial action; Cathy Green, Defendants' HR Director, who received and handled Plaintiff's formal discrimination complaints; and David Topper, the primary source of the discriminatory harassment at issue.

On May 1, 2026, Plaintiff served her discovery demands and proposed ESI Protocol, requesting a hit report or comparable metrics to substantiate any burden objections and offering a meet and confer. Defendants' document demand responses were due June 2, 2026. On May 8 and May 15, Plaintiff followed up on the ESI Protocol, each time reiterating her request for a hit report. On May 22, Defendants responded for the first time, characterizing some of Plaintiff's search terms as "severely overbroad" — despite not having downloaded or reviewed any data, run any searches, or produced any metrics to support that characterization. At the same time, Defendants requested an



extension of their discovery response deadline to June 22, citing the ongoing ESI delay as the basis for the request. Plaintiff consented to the extension.

On May 28, the parties held a telephonic meet and confer during which Defendants again asserted undue burden. Plaintiff renewed her request for a hit report, stating modifications should be based on evidence rather than speculation. Defendants would not commit to providing one and Plaintiff followed up on June 4, June 9, and June 15.

On June 18, 2026, the parties held a second meet and confer. At that time, Defendants confirmed they will not produce a hit report, offering instead only to share their "search parameters." Defendants claimed that producing a hit report would implicate the attorney-client privilege because it would reveal the terms they intend to search — seemingly dismissing the possibility that they would run Plaintiff's proposed terms at all. When pressed on the delay, defense counsel acknowledged she had no explanation for why the data collection was taking so long. Plaintiff explained that a hit report showing search terms, custodians, timeframes, and hit counts is not privileged and is routinely exchanged in good faith ESI negotiations. Defendants disagreed and maintained their refusal. The parties were thus unable to reach agreement, necessitating this motion.

II.    This Court Should So-Order Plaintiff's Proposed ESI Protocol and Compel Production of Relevant ESI

Defendants' refusal to produce a hit report fails to meet their discovery obligations. Courts in this district have made clear that a hit report is a fundamental first step in ESI negotiations that imposes no undue burden on the producing party. *See Steinberg v. Cushman & Wakefield, Inc.*, No. 24 Civ. 6470 (DEH)(SLC), at 1 (S.D.N.Y. Feb. 27, 2025) ("the hit report is merely a first step in this discovery process and will not itself impose an undue burden"); *see also Winfield v. City of N.Y.*, No. 15-CV-05236 (LTS)(KHP), at *16 (S.D.N.Y. Nov. 27, 2017) (emphasizing that "review and production of ESI require cooperation between opposing counsel and transparency in all aspects"). Despite Plaintiff's repeated good faith efforts, Defendants have refused to cooperate.

First, Defendants' privilege assertion is meritless. The attorney-client privilege protects confidential communications between attorney and client made for the purpose of seeking or providing legal advice. The mechanics of an ESI search — what terms were run, against which custodians, over what timeframes, and how many documents each term returns — is not legal advice and is not privileged.

Moreover, the burden of establishing that a discovery request is unduly burdensome rests squarely with the party resisting discovery. *Fort Worth Employees Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102-03 (S.D.N.Y. 2013) (party resisting discovery must submit "affidavits or offering evidence revealing the



nature of the burden"); *Zhulinska v. Niyazov Law Grp.*, No. 21-CV-1348 (CBA) (E.D.N.Y. Nov. 12, 2021) (rejecting speculative claims of undue burden in ESI discovery without hit report); *Felder v. Warner Bros. Discovery, Inc.*, No. 23 Civ. 8487 (AT)(GS), 2025 U.S. Dist. LEXIS 117479, at *29 (S.D.N.Y. June 20, 2025) (party "cannot object to searches on burden grounds without substantiating its burden claim with a hit report"). Here, Defendants have offered nothing — no affidavit, no hit report, no evidence. Their overbreadth objections, raised before any data was collected or any search was run, are precisely the kind of speculative, unsubstantiated assertions courts have consistently rejected.

To the contrary, Plaintiff's proposed protocol is carefully tailored to the facts of this case. The custodians are the specific individuals whose conduct and communications are directly at issue, and the search terms track the core allegations: disability disclosures, accommodation requests, the PIP, FMLA leave, Topper's harassment, Green's receipt and handling of discrimination complaints, and the termination decision. The primary custodian group runs from Plaintiff's date of hire through her termination, with a second window capturing post-filing communications and preservation efforts. Green's search extends further back to capture prior complaints of discrimination, harassment, and FMLA violations she personally received, investigated, or handled in her capacity as HR Director — courts routinely order such multi-year discovery of similar complaints in employment cases. *See Shah v. Consolidated Edison Corp.*, No. 05 Civ. 2868 (JSR)(KNF) (S.D.N.Y. Oct. 26, 2006); *Shannon v. New York City Transit Auth.*, No. 00 Civ. 5079 (RWS) (S.D.N.Y. Mar. 22, 2001).

Finally, Defendants are sophisticated corporate entities generating billions of dollars in annual revenue, with the resources and infrastructure to manage ESI discovery in even the most complex litigation. The assertion that their IT teams require seven weeks — and counting — simply to collect and index the data, without any explanation for the delay or any timeline for completion, strains credulity. With depositions due August 7 and fact discovery closing August 21, this unexplained delay, combined with Defendants' categorical refusal to produce a hit report even once the data is collected, suggests an intent to run out the clock rather than engage in good faith ESI negotiations.

In sum, Defendants' refusal to substantiate their objections, baseless privilege claim, and unexplained delay warrant Court intervention. Accordingly, Plaintiff respectfully requests that the Court so-order the proposed ESI Protocol and compel production by a date certain. We thank the Court for its time and consideration of this letter motion.

<div style="margin-left:50%">

Respectfully submitted,
LIPSKY LOWE LLP

s/ Travis Pierre-Louis
Travis Pierre-Louis

</div>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLEENA FELDER, <br><br> Plaintiff, <br><br> v. <br><br> URBAN OUTFITTERS, INC., and URBN US RETAIL LLC d/b/a/ FREE PEOPLE, <br><br> Defendants. | Case No.: 1:25-cv-07283 |

## PROTOCOL FOR THE DISCLOSURE, SEARCH, AND PRODUCTION OF ELECTRONIC SYSTEMS AND ELECTRONICALLY STORED INFORMATION

Plaintiff Carleena Felder and Defendants Urban Outfitters, Inc. and URBN US Retail LLC d/b/a Free People (together, the "Parties") hereby agree to the following protocol for production of electronically stored information ("ESI"). This protocol has the objective of promoting, whenever possible, the early resolution of disputes regarding the discovery of ESI without the Court's intervention. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any ESI produced in accordance with this protocol.

## I.    GENERAL AGREEMENTS

**1.    Scope Of Discovery:** The standards, limits, and scope of discovery shall be governed by the Federal Rules of Civil Procedure ("FRCP"). The Parties agree to meet and confer in good faith with regard to any discovery disputes and any dispute the Parties cannot resolve amicably shall be resolved by the Court. Nothing in this ESI and Discovery Protocol shall be deemed as a waiver of the right of any party to object to any Request for Production, Interrogatory, or other discovery request.

**2.    No Designation of Discovery Requests:** Productions of ESI in the reasonably usable form set out in this protocol, including Attachments A and B, need not include any reference to the requests to which a document or ESI may be responsive.

1

**3.**      **Inadvertent Production:** The inadvertent production of any material constituting or containing attorney-client privileged information or work-product or constituting or containing information protected by applicable privacy laws or regulations shall be governed by the Parties' Stipulated Protective Order Regarding Confidential Information. In accordance with Federal Rule of Evidence 502 (b), no party shall be deemed to have waived its right to assert the attorney-client privilege and/or attorney work product privilege if privileged materials are inadvertently disclosed despite the Parties' exercise of a reasonable standard of care with respect to the production of such materials.

## II.      IDENTIFICATION OF ELECTRONIC SYSTEMS

**1.**      **Defendants.** Within seven (7) days after the full execution of this Protocol, Defendants shall identify in Attachment C all electronic systems, databases, and/or files that may contain documents or information responsive to Plaintiff's discovery requests.

**2.**      **Plaintiff.** Within seven (7) days after the full execution of this Protocol, Plaintiff shall identify in Attachment C all electronic systems, databases, and/or files that may contain documents or information responsive to Defendants' discovery requests.

## III.     FORM OF ESI PRODUCTION

**1.**      **Production in Reasonably Usable Form:** The Parties shall produce ESI in connection with this protocol in reasonably usable form. Except as stated in paragraph III(2) below or as agreed hereafter by the Parties, such reasonably usable form in connection with this protocol shall be PDF format with extracted or OCR text and associated metadata as set out in **Attachment A**, which is incorporated in full in this protocol. If the receiving party seeks production in native format of specifically identified ESI produced originally in PDF form, the producing party shall respond reasonably and in good faith to any such request.

**2.**      **Documents Subject to Production in Native Format:** Electronic spreadsheets (e.g., Excel), electronic presentations (e.g., PowerPoint), desktop databases (e.g., Access), and audio/video multimedia files that have been identified as responsive shall be produced in native format as well as other documents that cannot be rendered as PDFs.

**3.**      **Deduplication:** A party is only required to produce a single copy of a responsive document, and a party should de-duplicate responsive ESI across custodians provided, however, all custodians who sent, received, or were copied (including blind copied) on such email exchange are identifiable. Any de-duplication tool used by a party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space), and attachments are wholly included in another more complete email.

2

**IV.**  <u>**SEARCH OF ESI:**</u>

   a.  The Parties shall meet and confer to discuss the use of reasonable search terms, custodians, file types, and date ranges ("ESI and Discovery Protocol"), which will apply to the following ESI systems identified by Defendants.

   b.  Defendants' corporate email systems including all files and folders contained therein, including, without limitation, inbox, outbox, deleted, trash and draft folders, and the fields "TO", "FROM", "CC", "BCC", "SUBJECT" and the body.

   c.  Plaintiff will conduct a manual search of her email systems including all files and folders contained therein, including, without limitation, inbox, outbox, deleted, trash and draft folders, and the fields "TO", "FROM", "CC", "BCC", "SUBJECT" and the body.

   d.  The agreed-upon ESI and Discovery Protocol shall be attached hereto as **Attachment B**. To the extent the search terms the Parties agree to result in excessive and/or overly burdensome results, the Parties will meet and confer in good faith to discuss potential revisions to the search terms. If Defendant objects to any proposed search terms, custodians, or parameters on the grounds of undue burden or other objection, they shall produce a hit report or comparable metrics to support its position and facilitate meet and confer efforts. This ESI and Discovery Protocol shall not affect either party's right to seek Court relief regarding any disagreements regarding the initial search terms, custodians or other parameters of the ESI and Discovery Protocol or revisions to the search terms that cannot be resolved between the Parties.

   e.  Defendants shall retain the sole right and responsibility to conduct the searches of their data files. The fact that any electronic file has been identified as being "hit" by a search term shall not prevent Defendants from withholding such file from production on the grounds that the file is not responsive to any discovery request or is protected from disclosure by an applicable privilege. However, to the extent any document responsive to a discovery request is withheld on grounds of any applicable privilege or any other objection, such document must be identified in a privilege log.

   f.  Nothing in this Agreement shall limit Plaintiff's right to seek additional custodians and/or keywords to be applied to the ESI and Discovery Protocol at any point during discovery. The Parties shall meet and confer in good faith on any such requests before seeking the Court's intervention.

**V.**  <u>**PERSONAL AND OTHER ACCOUNTS:**</u>

   a.  <u>**Plaintiff:**</u> Plaintiff shall conduct a thorough and diligent search of her personal email accounts (including all folders), personal cellular phones, personal computers, social media accounts, and any other electronic database that may contain documents and/or information responsive to Defendant's discovery requests, including all locations identified in Attachment C. This paragraph is not intended to limit the obligations or expand the obligations of the custodians named herein to search and produce documents pursuant to the FRCP.

<div align="center">3</div>

b. **Other Accounts:** To the extent there are additional sources of ESI that may contain documents and/or information responsive to a discovery request not specifically referenced herein, the producing party shall have an obligation to thoroughly and diligently search such sources for responsive ESI consistent with the obligations of the FRCP. If a source of potentially responsive ESI is too voluminous and/or overly burdensome to search, the Parties shall meet and confer and attempt to devise a search term or other protocol and attempt to ease the volume and/or burden on the producing party.

## VI.    HIGHLY RELEVANT PERIOD

The Parties agree that there are certain time periods that are more likely to have documents responsive and relevant to this action. In addition to the keyword searches performed pursuant to **Attachment B**, Defendant will also review for relevance and responsiveness the entire work e- mail systems for the following individual during the following respective time periods:

| Custodians | Time Frame |
|---|---|
| Jake Pelletier | October 5 – October 12, 2023<br>November 1 – November 9, 2023<br>January 10 – January 12, 2024 |
| Kate Chase-Lansdale | November 1 – November 9, 2023<br>January 10  – January 12, 2024 |
| Cathy Green | November 1 – November 9, 2023 |

Lipsky Lowe, LLP
420 Lexington Avenue, Suite 1830
New York, NY 10170
(212) 392-4772

Gordon Rees Scully Mansukhani, LLP.
One Battery Park Plaza, 28th Floor
New York, NY 10004
(212) 269-5500

By: _____
Travis Pierre-Louis

By: _____

ATTORNEYS FOR PLAINTIFF

ATTORNEYS FOR DEFENDANTS

## **ATTACHMENT A**

A.1.   PDF Files: Files produced in PDF will include available metadata. To the extent possible, original orientation will be maintained (i.e., portrait-to- portrait and landscape-to-landscape). Each PDF page will be assigned a unique name matching the production number of the corresponding page. Production ("Bates-Stamp") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will: be consistent across the production; contain no special characters; and be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 7-digit number (e.g., ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner or lower center of all images and shall not obscure any portion of the original file.

A.2.   File Text: Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file. Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.pdf image will be OCR'd, and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3.   Word Processing Files: Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with tracked changes and comments showing.

A.4.   Spreadsheet or Worksheet Files: To the extent that spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.pdf image format (i.e., the file is redacted in part such that it cannot be produced natively per Section III(2) above), such *.pdf images will display hidden rows, columns, and worksheets, if any, in such files.

A.5.   Parent-Child Relationships: Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent- child relationships will be identified in the data load file pursuant to paragraph A.11 below.

A.6.   Dynamic Fields: Files containing dynamic fields such as file names, dates, and times will be produced showing data based upon the "last modified date" of the file rather than the values for such fields existing at the time the file is processed.

A.7.   Embedded Objects: Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Outlook; and PDF. Subject to claims of privilege, as applicable, objects with those identified file

types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

A.8.    Compressed Files: Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.9.    Encrypted Files: The producing party will take reasonable steps, prior to production, to provide passwords and any other access requirements for encrypted files produced.

A.10.    Production Numbering: In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted.

A.11.    Data and Image Load Files:

*Load Files Required:* Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

*Load File Formats:*

i.    Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

ii.    Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

iii.    Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

*Fields to be Included in Data Load File:* For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions.

| Field | Sample Data | Comment |
|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Beginning production number |
| PRODEND | ABC00000008 | Ending production number |
| PRODBEGATT | ABC00000009 | Beginning production number of parent in a family |

| PRODENDATT | ABC00001005 | Ending production number of last page of the last attachment in a family |
|---|---|---|
| CUSTODIAN(S) | Smith, John | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| NATIVEFILE | Natives\001\001\ABC 00000001.xls | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | Description of the file type for the produced record. |
| FOLDER | \My Documents\Document1. doc | Original source folder for the record produced. |
| FILENAME | Document1.doc | Name of original electronic file as collected. |
| DOCEXT | DOC | File extension for email or e-doc |
| PAGES | 2 | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | Author information as derived from the properties of the document. |
| DATELASTMOD | 10/09/2005 | Date that non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | "From" field extracted from email message |
| TO | Janice Birch | "To" field extracted from email message |
| CC | Frank Maple | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | Received time of email message, time zone set to GMT |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Text of confidentiality designation, if any |

| TEXTPATH | Text\001\001\ ABC00000001.txt | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Name of the Production Volume |

A.12.  Files Produced in Native Format: Any electronic file produced in native file format shall be given a file name consisting of a unique Bates-Stamp number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential." For each native file produced, the production will include a *.pdf slipsheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively." To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.13.  Production Media: Unless otherwise agreed, documents and ESI will be produced on USB flash drive, external hard drive, secure FTP site or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the producing party, and the following information: Volume name, production range(s), and date of delivery.

**ATTACHMENT B**

| Custodian(s) | Time Frame | Search Terms |
|---|---|---|
| Group 1<br><br>Jake Pelletier<br>Kate Chase-Lansdale<br>David Topper | May 1, 2022 through January 31, 2024<br><br>July 17, 2025 through the present | <ul><li>Carlee!</li><li>Felder!</li><li>Harass!</li><li>Hostile!</li><li>Bitch!</li><li>Fuck!</li><li>Fat!</li><li>Complain!</li><li>Report!</li><li>Concern!</li><li>Investigat!</li><li>Discriminat!</li><li>Retal!</li><li>Bipolar!</li><li>Manic!</li><li>Seizure!</li><li>Panic!</li><li>PTSD!</li><li>Epilep!</li><li>Accommodat!</li><li>Disab!</li><li>Interactive! /3 process!</li><li>Medic!</li><li>FMLA!</li><li>Human! /3 right!</li><li>Civil! /3 right!</li><li>NYCHRL</li><li>NYSHRL</li><li>PIP</li><li>Perform! /3 plan!</li><li>Lipsky</li><li>Lowe</li><li>Terminat!</li><li>Fire!</li><li>Lawsuit!</li><li>Litigat!</li></ul> |
| Group 2<br><br>Cathy Green | May 1, 2021 to the present | <ul><li>Carlee!</li><li>Felder!</li><li>Topper</li><li>Harass!</li><li>Hostile!</li><li>Bitch!</li><li>Complain!</li><li>Report!</li></ul> |

| | | |
|---|---|---|
| | | <ul><li>Concern!</li><li>Investigat!</li><li>Discriminat!</li><li>Retal!</li><li>Accommodat!</li><li>Disab!</li><li>FMLA!</li><li>Human! /3 right!</li><li>Civil! /3 right!</li><li>NYCHRL</li><li>NYSHRL</li><li>PIP</li><li>Perform! /3 plan!</li><li>Lipsky</li><li>Lowe</li><li>Terminat!</li><li>Fire!</li><li>Lawsuit!</li><li>Litigat!</li></ul> |
| Group 3<br><br>Carleena Felder | May 1, 2022 through January 31, 2024 | <ul><li>David!</li><li>Topper!</li><li>Harass!</li><li>Hostile!</li><li>Complain!</li><li>Report!</li><li>Investigat!</li><li>Discriminat!</li><li>Retal!</li><li>Bipolar!</li><li>Manic!</li><li>Seizure!</li><li>Panic!</li><li>PTSD!</li><li>Epilep!</li><li>Accommodat!</li><li>Disab!</li><li>Interactive! /3 process!</li><li>Medic!</li><li>FMLA!</li><li>Human! /3 right!</li><li>Civil! /3 right!</li><li>PIP</li><li>Perform! /3 plan!</li><li>Terminat!</li><li>Fire!</li></ul> |

**ATTACHMENT C**